**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | |
|---|---|
| DANIEL BERMAN and WILLIAM McCUTCHEN, as successors in interest to MAINQUAD COMMUNICATIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DAVIDSON MEDIA VIRGINIA STATIONS, LLC, *et al.*, <br><br> Defendants. | Civil Action No. 3:15-cv-299 |

**MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OF ATALAYA ADMINISTRATIVE LLC AND ACM VRF V LLC**

Plaintiffs' Amended Complaint purports to allege a single count against Atalaya Administrative LLC ("Atalaya Administrative") and ACM VRF V LLC ("ACM") (Atalaya Administrative and ACM collectively, the "Atalaya Entities") for tortious interference with contract. Am. Compl. ¶¶ 62-70. The Amended Complaint, however, is devoid of factual allegations against the Atalaya Entities, mentioning them by name in only three places, including the introduction and the identification of the parties. Rather than offer *facts* to support its claim, the Amended Complaint offers only unsupported legal conclusions. These unsupported conclusory statements fail as a matter of law—even if Plaintiffs' legal conclusions could be interpreted as factual allegations, the events Plaintiffs reference happened **before** December 12, 2014, the date on which ACM purchased the senior debt at issue and Atalaya Administrative was appointed the agent for the senior debt holders.

Simply, the Amended Complaint fails to allege facts sufficient to establish that the Atalaya Entities committed any tortious interference with Plaintiffs' contract with Davidson Media Virginia Stations, LLC ("Davidson"). Accordingly, the Court should dismiss Plaintiffs' claim against the Atalaya Entities pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## BACKGROUND

This case involves an alleged breach of a 2005 Promissory Note (the "Note") in favor of MainQuad Communications, Inc. ("MainQuad") and a 2005 Subordination Agreement providing the legal enforceability of the Note. Both documents are dated May 13, 2005, and the Subordination Agreement expressly references the Note as an "instrument, agreement or other writing evidencing of governing the Subordination Agreement."[1] Am. Compl. ¶¶ 26-28, Exs. 1 & 2. Under the terms of the Subordination Agreement, Davidson's debt to MainQuad was subordinate to other lenders under a separate Financing Agreement dated January 28, 2005. Am. Compl. Ex. 2. MainQuad purportedly assigned the Note to Plaintiffs Daniel Berman and William McCutchen on March 29, 2010.[2] Am. Compl. ¶ 47.

---

[1] Plaintiffs attached as Exhibit 2 to the Amended Complaint a version of the Subordination Agreement that failed to include Schedule I, which "is a complete and correct description of all instruments, agreements and other writings evidencing or governing the Subordinated Obligations. " Am. Compl. Ex. 2 at § 10(iii). Had Plaintiffs included Schedule I, the Court would see that the Note is expressly listed, thereby dispelling any argument that the Note is not controlled by the terms of the Subordination Agreement. *See* Exhibit 1 attached hereto. Moreover, under the Subordination Agreement, MainQuad (and now Plaintiffs) waived their right to a jury trial. Am Compl. Ex. 2 at § 13(g). The Court, therefore, should strike Plaintiffs' jury demand, and the Atalaya Entities hereby reserve all rights to move to strike Plaintiffs' jury demand.

[2] Under the Note, MainQuad could only assign the Note if that assignment was "made expressly to [the Subordination] Agreement." Am. Compl. Ex. 2 at § 6(b). The Atalaya Entities do not conceded that the Note was properly assigned from MainQuad to Plaintiffs, or that Plaintiffs have the right to maintain this suit.

Plaintiffs' Amended Complaint purports to assert a breach of contract claim against Davidson for Davidson's alleged failure to pay on the Note (Count I). Plaintiffs' Amended Complaint also purports to allege a claim for tortious interference with contract (Count II) against myriad entities and individuals, including the Atalaya Entities. The entire substance of Plaintiffs' factual allegations is that, rather than sell Davidson to an entity named Golden Door, ownership of Davidson was transferred to SSB in *January 2009* under the terms of the Purchase Agreement and Agreement and Plan of Merger. Am. Compl. 36-43. The sale pursuant to this Purchase Agreement and Agreement and Plan of Merger allegedly caused Davidson to breach its obligation to pay the MainQuad Note. *Id.*

The Amended Complaint makes a singular factual allegation with regard to both ACM and Atalaya: On December 14, 2014, ACM purchased all of Davidson's alleged senior debt, and Atalaya Administrative was appointed as Agent for the senior lenders. *See* Am. Compl. ¶¶ 51, 52 & Ex. 10. Importantly, the Amended Complaint fails to include either of the Atalaya Entities in any of the substantive factual allegations relating to the alleged tortious interference with contract.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss should be granted unless the complaint contains "[f]actual allegation[s] [sufficient] to raise a right to relief above the speculative level" and must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cox v. Mag Mut. Ins. Co.*, 14-cv-377-JAG, 2015 WL 1640513, at *2, n.2 (E.D. Va. Apr. 9, 2015) (Gibney, J.). Thus, a plaintiff is obligated to provide the "grounds" for its "entitlement to relief," and the complaint must contain more than labels and conclusions; a formulaic recitation of the elements of a cause of action is not sufficient to survive

a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *Anand v. Ocwen Loan Servicing*, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

To survive a motion to dismiss, a plaintiff must alleges *facts* sufficient to support each and every element of the asserted claims. *See Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003); *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Further, under Fed. R. Civ. P. 12(b)(6), on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *SD3, LLC v. Black & Decker (U.S.) Inc.*, --F.3d--, 2015 WL 5334119 at *5 (4th Cir. Sept. 15, 2015) (The court will reject "unwarranted inferences, unreasonable conclusions, or arguments," as well as "naked assertions devoid of further factual enhancement.") (quoting *United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014)); *Hunt v. Calhoun County Bank, Inc.*, 8 F. Supp. 3d 720, 725 (E.D. Va. 2014). Even when factual allegations are well-pled, a court should "determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint that fails to state a legal claim will be dismissed. *Dist. 28, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.*, 609 F.2d 1083, 1085-86 (4th Cir. 1979).

## ARGUMENT

Plaintiffs fall woefully short of the required pleading standard in their attempt to assert a claim against the Atalaya Entities. In fact, Plaintiffs make *no* factual allegations to support a tortious interference claim against the Atalaya Entities; offering only legal conclusions unsupported in fact. Even if the Amended Complaint could be viewed as containing facts in support of a tortious interference claim—which is a stretch by any means—any such "facts" occurred *before* December 12, 2014, the date on which ACM purchased Davidson's senior debt

and Atalaya Administrative was appointed agent for the senior lenders. Thus, Plaintiffs fail to state a claim against the Atalaya Entities.

To allege a tortious interference with contract claim under New York law, Plaintiffs must allege facts sufficient to show (1) the existence of a valid contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional procurement of the third party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting from the breach.[3] *Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 594 (N.Y. 2012). The plaintiff must further allege that the contract would not have been breached but for the defendant's conduct. *Ferrandino & Son, Inc. v. Wheaton Bldrs., Inc., LLC*, 82 A.D.3d 1035, 1036 (N.Y. Sup. Ct. 2011).

## I. THE AMENDED COMPLAINT IS DEVOID OF FACTUAL ALLEGATIONS AGAINST THE ATALAYA ENTITIES

The amended complaint offers a singular factual allegation against each of the Atalaya Entities by name, each occurring on December 12, 2014:

- On information and belief, all of Davidson's alleged senior indebtedness is nominally held by ACM, which recently purchased the debt from various parties. Am. Compl. ¶ 51;

- On information and belief, the agent for Davidson's senior lenders is presently Atalaya, who recently succeeded Fortress, which succeeded D.B. Zwirn. Am. Compl. ¶ 52.[4]

---

[3] Pursuant to the Note and the Subordination Agreement, New York law governs this dispute; the Note provides:

> This Notes shall be construed in accordance with, this this Note and all matters arising out of or relating in any way whatsoever to this Note (whether in contract, tort or otherwise) shall be governed by, the law of the State of New York.

Am. Compl. Ex. 1 at 4; *see also* Am. Compl. Ex. 2 at 8. Even if the Court were to apply Virginia law to the tort claim, however, the test under Virginia law is similar to New York law, and Plaintiffs' Amended Complaint does not sufficiently plead a tortious interference claim against the Atalaya Entities. *See Cox*, 2015 WL 1640513, at *3.

[4] Exhibit 10 to the Amended Complaint shows that the Atalaya Entities became involved with Davidson on December 12, 2014. Am. Compl. Ex. 10. In testing the sufficiency of the complaint, the court may consider the complaint itself and any documents attached to the

While Plaintiffs mention other defendants in their recitation of the facts, the sole factual allegations that ACM VRF recently purchased Davidson's debt, and that Atalaya Administrative recently was appointed agent for the senior lenders, are insufficient to support the naked assertions in the tortious interference count that Atalaya is one of the unnamed "defendants" that knowingly, intentionally and without legitimate business purpose, caused Davidson to breach its obligation of good faith and fair dealing to Plaintiffs. *See SD3, LLC*, 2015 WL 5334119, at *5 ("The complaint must forecast the [required] factual showing, and if it fails to allege particular facts against a particular defendant, then that defendant must be dismissed. In other words, the complaint must 'specify how these defendants [were] involved in the alleged conspiracy,' without relying on 'indeterminate assertions' against all 'defendant.'").

It is not surprising that ACM and Atalaya Administrative are not referenced once in the factual allegations giving rise to Plaintiffs' tortious interference claim. As noted above, ACM and Atalaya Administrative did not purchase the senior debt or take over agent responsibilities until December 12, 2014, almost six years after the alleged tortious interference took place.[5]

---

complaint. *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009).

[5] Even if Plaintiffs properly pled a claim for tortious interference against the prior debt-holders and agents, which it does not appear they do, tortious actions of others do not attach to the Atalaya Entities as the holder in due course of the commercial paper and the newly-appointed agent. *See cf* N.Y. Rights of a Holder in Due Course Law § 3-305 (McKinney) (a holder in due course "takes the instrument free from (1) all claims to it on the part of any person . . . .); *see also Hartford Accident & Indem. Co. v. American Express Co.*, 518 N.Y.S.2d 93, 95 (N.Y. App. Div. 1987) ("Whether Defendants were holders in due course of the checks taking free of all defenses is concededly the dispositive issue between the parties. If the answer is affirmative, they could not be liable for any tortious conduct . . . .").

## II. THE EVENTS GIVING RISE TO PLAINTIFFS' CLAIM OCCURRED BEFORE THE ATALAYA ENTITIES BECAME INVOLVED WITH DAVIDSON

Rather than provide the necessary factual support for its claims against the Atalaya Entities, Plaintiffs lump the Atalaya Entities in with the many other defendants in this case, and make several unsupported legal conclusions in its tortious interference count. Specifically, Plaintiffs allege that "defendants" (1) orchestrated, advised, and otherwise caused Davidson not to consummate the transaction with Golden Door (Am. Compl. ¶ 64), (2) restructured the senior lender's debt into equity and misrepresented that Davidson was in default to its senior lenders (Am. Compl. ¶ 65), and (3) orchestrated, advised and otherwise caused the restructuring of Davidson's debt into an equity stake through execution of the Purchase Agreement and Agreement and Plan of Merger (Am. Compl. ¶ 66). Plaintiffs' further allege that Davidson would not have breached but for "defendants" actions. Am. Compl. ¶ 67. As explained above, there are no factual allegations to support any conclusion that the Atalaya Entities did any of the things identified here, and Plaintiffs' attempt to use the term "defendants" to allege specific wrongdoing against the Atalaya Entities is improper. *See SD3, LLC*, 2015 WL 5334119, at *5.

To the contrary, it would have been impossible for the Atalaya Entities to take any of the alleged actions. As Plaintiffs acknowledge, ACM and Atalaya Administrative only *recently* (December 12, 2014) bought Davidson's senior lender debt and became the designated agent for such debt. Am. Compl. ¶¶ 51 & 52, Ex. 10. Thus, December 12, 2014, is the operative date for any actions by either ACM or Atalaya Administrative that allegedly interfered with Plaintiff's contract with Davidson.

As demonstrated below, all of the facts that could conceivably support the tortious interference claim took place well before December 12, 2014.

| **Allegation in Tortious Interference Count** | **Date of Potential Factual Support** |
|---|---|
| Defendants orchestrated, advised, and otherwise caused Davidson not to consummate the transaction with Golden Door. Am. Compl. ¶ 64. | Rather than sell Davidson to Golden Door, ownership of Davidson was transferred to SSB in *January 2009*. Am. Compl. ¶ 38. |
| Knowing restructuring of the senior lender's debt into equity and misrepresenting that Davidson was in default to its senior lenders. Am. Compl. ¶ 65. | Sale to SSB in *January 2009* allegedly resulted in restructuring of the debt into equity. Am. Compl. ¶¶ 38-43. |
| Orchestrated, advised and otherwise caused the restructuring of Davidson's debt into an equity stake in Davidson through execution of the Purchase Agreement and Agreement and Plan of Merger. Am. Compl. ¶ 66. | The Purchase Agreement and Agreement and Plan of Merger are both dated *January 30, 2009*. Am. Compl. Exs. 8 & 9. |
| Knowingly and intentionally caused Davidson to breach its obligation of good faith and fair dealing to Plaintiffs. Am. Compl. ¶ 67. | Davidson's breach was allegedly caused by the transactions related to the sale of Davidson to SSB rather than Golden Door in *January 2009*. Am. Compl. ¶¶ 38-43. |

Plaintiffs' legal conclusions reflect an improper "formulaic recitation of the elements of a cause of action[]," *Twombly*, 550 U.S. at 555, and as a matter of law there is no way to read the factual allegations regarding ACM's and Atalaya Administrative's role—merely purchasing the debt and becoming the lenders' agent in December 2014—as supporting a tortious interference claim that is plausible on its face. *Iqbal*, 556 U.S. at 678.

## CONCLUSION

Because Plaintiffs' Amended Complaint is devoid of factual allegations against ACM VRF V LLC or Atalaya Administrative LLC, and the Amended Complaint makes clear that any tortious actions occurred before either of those Atalaya Entities became involved with Davidson, this Court should dismiss the Amended Complaint pursuant to Rule 12(b)(6) for failure to state a claim.

- 9 -

Dated:  October 16, 2015

Respectfully submitted,

Atalaya Administrative LLC
ACM VRF V LLC

By:   /s/ John F. Henault
John F. Henault, Bar No. 472590
JHenault@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C.  20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211

Counsel for Defendants
Atalaya Administrative LLC and
ACM VRF V LLC

Case 3:15-cv-00299-JAG   Document 47   Filed 10/16/15   Page 9 of 10 PageID# 504

## **CERTIFICATE OF SERVICE**

I hereby certify this October 16, 2015, I will electronically file the foregoing document with the Clerk of the Court using the CM/ECF System, which will send a notification of filing to all counsel of record.

/s/ John F. Henault
John F. Henault, Bar No. 472590
JHenault@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: 202.654.6200
Facsimile: 202.654.6211

Counsel for Defendants
Atalaya Administrative LLC and
ACM VRF V LLC