IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Richmond Division**

DANIEL BERMAN et al.,
*as successors in interest to MainQuad*
*Communications, Inc.*,

      Plaintiffs,

v.                            Civil Case No. 3:15-cv-00299

DAVIDSON MEDIA VIRGINIA
STATIONS, LLC, et al.,

      Defendants.

## OPINION

The plaintiffs sued Davidson Media Virginia Stations, LLC ("Davidson Virginia"), for breach of contract, and various entities including Atalaya Administrative, LLC ("Atalaya"), for tortious interference with contract. The plaintiffs argue that Atalaya acted unjustifiably to prevent Davidson Virginia from repaying a promissory note worth one million dollars. Atalaya argues that the plaintiffs have failed to state a claim because they have not pleaded enough facts, even if taken as true, to show that Atalaya tortiously interfered with their contract with Davidson Virginia. The Court agrees with Atalaya, finds that the plaintiffs have failed to state a claim, and dismisses the claim against Atalaya.

## I. BACKGROUND

### A. The 2005 Promissory Note and Subordination Agreement

The plaintiffs, successors in interests to MainQuad Communications, Inc. ("MainQuad"), have sued Davidson Virginia to enforce a Promissory Note ("the Note") executed by Davidson Virginia in favor of MainQuad. The parties executed the Note for a principal amount of one

million dollars plus seven percent interest per year along with an accompanying Subordination Agreement. The Subordination Agreement subordinated the Note to Davidson Virginia's senior debt obligations. In other words, MainQuad could not collect on the Note until Davidson Virginia satisfied its debt to its senior lenders.

### B. The 2008 Suit and Settlement Agreement

MainQuad filed suit to collect the debt owed under the Note in September 2008. Davidson Virginia filed its answer admitting it had not paid the amount due on the Note, but asserting that it still had obligations to its senior lenders, so the Note remained subordinated under the Subordination Agreement. The parties settled the suit in December 2008 (the "Settlement Agreement"). Under the Settlement Agreement, Davidson Virginia agreed to pay MainQuad $600,000 and, as a condition precedent to the Settlement Agreement, it agreed to sell certain assets to Golden Door Broadcasting, LLC ("Golden Door"). The sale of assets to Golden Door never occurred. Accordingly, the Settlement Agreement never went into effect.

In January 2009, the corporate entities involved in Davidson Virginia, entered into a Purchase Agreement and Plan of Merger. The plaintiffs assert that, in practice, this restructuring exchanged the senior lenders' entitlement to payment of outstanding loans for equity shares in Davidson Virginia.

### C. The Current Suit

After the restructuring, Davidson Virginia continued to assert that it had not paid its obligations to its senior lenders, so the Subordination Agreement prevented payment on the Note. The plaintiffs claim that sometime in late 2014 or early 2015, they learned that a Davidson affiliate, subject to the same senior debt as Davidson Virginia, made a capital expenditure of $500,000. This led the plaintiffs to believe that the senior lenders now act as beneficial owners

of Davidson Virginia, and the current chairman and president of Davidson Media Group, LLC ("Davidson Group"), the corporate parent of Davidson Virginia, simply act as proxies for the senior lenders.

On December 12, 2014, almost ten years after the parties signed the note, ACM VRF V, LLC ("ACM"), bought the loans and obligations that Davidson Virginia owed. On that same date, the required lenders gave consent to appoint Atalaya as a successor agent for the lenders. This marks Atalaya's first foray into this dispute. As part of the purchase of the loans, ACM, through Atalaya, told Davidson Virginia that it had to fulfill all of its obligations by December 31, 2014, or it would find itself in default.

On May 15, 2015, counsel for the plaintiffs wrote a letter to Davidson Virginia informing them that the plaintiffs "hereby declare the Settlement Agreement null and void." (Second Am. Compl. Ex., 11.) On May 18, 2015, the plaintiffs filed their initial complaint in this matter, which included a breach of contract claim. On June 3, 2015, Atalaya wrote a letter to Davidson Virginia informing them that they owed full payment on all the loans that ACM had purchased. In the letter, Atalaya reiterated that ACM has first priority liens and stated that "no action prohibited to be taken under the Financing Agreement and the other Loan Documents while an Event of Default exists and is continuing may be taken until the Loans and Obligations are paid in full, including but not limited to the making of any payment of, [] that certain $1,000,000 Promissory Note dated May 13, 2005." (Second Am. Compl., Ex. 10.) The plaintiffs argue that these actions by Atalaya constitute tortious interference with contract.

The plaintiffs filed their Second Amended Complaint after a hearing on the defendants' motions to dismiss the plaintiffs' amended complaint. At that time, the Court granted Atalaya's motion to dismiss, but allowed the plaintiffs to re-plead their tortious interference with contract

claim against Atalaya in an amended complaint.  The Court warned plaintiffs that failure to plead

more facts against Atalaya would result in Atalaya's dismissal from the case.

## II. DISCUSSION[1]

Under New York law,[2] the elements of a tortious interference with contract claim "are (1)

the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's

knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's

breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages

resulting therefrom.'" *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (citing

*Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375, 646 N.Y.S.2d 76, 82 (1996).

Plaintiffs have failed to state a claim under New York law because they do not identify

any facts that show that Atalaya intentionally procured Davidson Virginia's breach without

justification, as required by the third element of a tortious interference with contract claim.  First,

Atalaya does not even enter the picture until the very end of 2014, almost ten years after the

original parties signed the note, and about five years after the alleged restructuring that began the

tortious conduct.  Thus, the facts do not support the contention that Atalaya's actions led to the

alleged breach.

---

[1] A Rule 12(b)(6) motion to dismiss gauges the sufficiency of a complaint without resolving any factual discrepancies, testing the merits of the claim, or judging the applicability of any defenses raised by the non-moving party.  *Republican Party of N.C. v. Martin*, 960 F.2d 943, 952 (4th Cir. 1992).  A 12(b)(6) motion considers whether the non-moving party's description of the facts, if assumed completely true, would entitle the plaintiffs to the requested relief.  *Unus v. Kane*, 565 F.3d 103, 115 (4th Cir. 2009).  To survive a 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[2] New York law applies to this matter because the Note specifically states "this Note and all matters arising out of or relating in any way whatsoever to this Note (whether in contract, tort or otherwise) shall be governed by, the law of the State of New York."  (Second Am. Compl. Ex. 1, at 4.)  Accordingly, New York law governs any tortious interference claim that arises out of a breach of the Note.

The plaintiffs point to the June 3, 2015 letter written by Atalaya to Davidson Virginia in which Atalaya stated that Davidson Virginia has outstanding debt to the senior lenders and must fully pay off those debts before making any payment to junior lenders including MainQuad.  The plaintiffs try to use this one statement, along with the fact that Atalaya became the senior lenders agent in December 2014, to claim that Atalaya's actions caused the breach of contract.  The plaintiffs' heavy reliance on this letter does not aid their case because Atalaya sent the letter *after* the plaintiffs alleged Davidson Virginia breached the contract.  It stands contrary to basic logic that an event that occurred after the breach of a contract could have caused that same breach.

Second, even if the plaintiffs had pleaded sufficient facts to show that Atalaya's actions interfered with their contract, tortious interference with contract requires that the plaintiffs plead facts that show that Atalaya's demand for payment constituted an *unjustifiable* interference in contract.  The plaintiffs attempt to demonstrate the unjustifiable nature of Atalaya's conduct by simply describing Atalaya's actions as unjustifiable.  They provide no facts that support this characterization.[3]

The factual allegations simply do not provide enough support for the tortious interference with contract claim against Atalaya.  Consequently, the Court grants Atalaya's motion to dismiss.

---

[3] Even if the plaintiffs had pleaded facts sufficient to show that Atalaya acted unjustifiably, the facts as pleaded by the plaintiffs actually show that Atalaya has a defense to the tortious interference with contract claim.  Atalaya acted in its own economic interest to secure money that Davidson Virginia owed ACM and had defaulted on.  *See White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 426, 867 N.E.2d 381, 383-84 (2007) ("In response to such a [tortious interference with contract] claim, a defendant may raise the economic interest defense—that it acted to protect its own legal or financial stake in the breaching party's business. The defense has been applied, for example, … where defendant was the breaching party's creditor")

### III. CONCLUSION

For the reasons stated, the Court GRANTS Atalaya's Motion to Dismiss and dismisses the claim against Atalaya WITH PREJUDICE.

An appropriate Final Order shall issue.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: <u>February 26, 2016</u>
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

6